## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL ACTION NO. 1:07CV35-LG-JMR |
| | § | |
| INDUSTRIAL CORROSION CONTROL, | § | |
| INC. , et al | § | DEFENDANTS |

### MEMORANDUM OPINION AND ORDER

**BEFORE THE COURT** is the Motion for Summary Judgment [44] filed by Roy Anderson Corp. ("RAC") and the Motion for Summary Judgment [43] filed by AVC Painting Contractor, Inc.  RAC seeks summary judgment as to its cross claim for indemnification against Industrial Corrosion Control, Inc. ("ICCI").  AVC seeks summary judgment as to ICCI's cross-claim, asserting that it is not vicariously liable for the negligence of its employee, Eddie Cardenas.

### FACTS

RAC was the general contractor on the Hard Rock Hotel and Casino construction project in Biloxi, Mississippi.  RAC entered a subcontract with ICCI in which ICCI agreed to indemnify RAC under certain circumstances set forth below.  ICCI also entered into a sub-subcontract with AVC.  On April 20, 2005, Horacio Cardenas, an employee of RAC, was injured at the construction site.  The accident was allegedly caused by the negligence of Eddie Cardenas, an employee of AVC.  Eddie[1] had clocked out of work, and was attempting to leave the construction site, when he struck another vehicle, which in turn struck Horacio.

---

[1]Although various spellings of Eddie Cardenas' name are used by the parties, the Court will use the spelling primarily utilized by his employer, AVC.  Additionally, since Eddie Cardenas and Horacio Cardenas have the same last name, the Court will refer to these gentlemen by their first names in order to avoid confusion.

RAC, as the general contractor on the project, has been paying workers' compensation benefits to Horacio for the injuries he suffered in the April 20, 2005, accident. RAC demanded indemnification from ICCI pursuant to the subcontract between the parties. Thereafter, ICCI's insurer filed this declaratory judgment action, asserting that no coverage was provided to ICCI for RAC's demand for indemnification. RAC then filed a cross claim against ICCI, seeking indemnification for the workers' compensation benefits it has paid to Horacio. ICCI filed a cross-claim against Eddie and AVC, seeking indemnification to the extent that it may be found liable to RAC.

RAC filed a Motion for Summary Judgment, asserting that there is no genuine issue of material fact that ICCI has a duty to indemnify RAC. AVC filed a Motion for Summary Judgment, arguing that it is not liable for Eddie's alleged negligence since he was acting outside the course and scope of his employment.

**DISCUSSION**

**RAC'S MOTION FOR SUMMARY JUDGMENT**

The subcontract between RAC and ICCI provides:

Section 19.  Indemnity.

19.1 To the fullest extent permitted by law, the Subcontractor [ICCI] covenants to defend, indemnify, save harmless, protect, and exonerate both the Contractor [RAC] . . . and the Owner, separately and severally, from any and all liability, claims, losses, suits, actions, demands, arbitration's [sic], administrative proceedings, awards, judgments, expenses, attorneys' fees, and costs pertaining to economic loss or damages, labor disputes, safety requirements, performance or nonperformance of obligations, certifications, property rights of third parties, personal injury, bodily injury, sickness, disease, death, or damage to or destruction of property (including loss of use thereof) which are caused in whole or in part, **which arise from or occur in connection with work undertaken or to be performed by the**

-2-

> **Subcontractor, its subcontractors or other third parties, or the agents or employees of any of them or which arise from or occur in connection with any other act or omission relating to the Subcontractor, its subcontractors or other third parties, or the agents or employees of any of them**, or to this Subcontract or to the Subcontract Work.

(Ex. C to RAC's Mot.) (emphasis added).  RAC asserts that it is entitled to indemnification from ICCI as a matter of law because it is undisputed that Eddie was employed by ICCI's subcontractor and that Eddie's negligent driving caused Horacio's injuries.  Alternatively, RAC asserts that ICCI owed a duty to obtain insurance coverage on behalf of RAC.  ICCI argues that RAC is not entitled to indemnification for the following reasons: (1) the subcontract was executed by the parties after Horacio was injured; and (2) Horacio's injuries did not arise from or relate to work undertaken by the subcontractor.  ICCI also asserts that it complied with its obligation to obtain insurance coverage on behalf of RAC.

The Court will first address whether the indemnity clause applies to Horacio's injuries given that the subcontract was executed after the accident.  Horacio was injured on April 20, 2005.  The subcontract was executed by a representative of ICCI on April 26, 2005, and by a representative of RAC on April 28, 2005.  However, the first page of the subcontract provides that the contract date is March 9, 2005, and that the subcontract was revised on April 12, 2005.  RAC has produced the affidavit of Robert P. Vollenweider, Executive Vice President of Finance and Risk Management for RAC, in which he states that ICCI had filed two applications for payment for work completed pursuant to the subcontract at issue.  (Ex. A to RAC's Reply).  The applications, which were dated March 30, 2005 and April 20, 2005, both contained the following statement: "Payment is subject to all the terms and conditions of the subcontract dated 3/9/05 which is incorporated by reference."  (Ex. A to RAC's Reply).  The first application for payment

sought $211,276.97 for work completed under the unsigned subcontract, and the second

application sought $308,614.68 for work completed under the unsigned subcontract.  (Ex. A to

RAC's Reply).

The Mississippi Supreme Court has explained:

> It is a well-settled principle of law that "acceptance of a contract as binding
> upon a party may be shown by his actions, and any definite and unequivocal
> course of conduct disclosing that the party has acceded or assented to it, is as
> binding on him as had he endorsed his assent in formal writing."

*Edwards v. Wurster Oil Co., Inc.*, 688 So. 2d 772, 775 (Miss. 1997)(quoting *Fanning v. C.I.T.*

*Corp.*, 192 So. 41,43 (Miss. 1939)).  However, ICCI relies on *Accu-Fab & Constr., Inc. v.*

*Ladner*, No. 96-CA-00692-COA, 2000 WL 274291 (Miss. Ct. App. Mar. 14, 2000).  In *Accu-*

*Fab*, the Court of Appeals held that an indemnification agreement that was received by Accu-Fab

on March 9, 1994 and executed on March 11, 2004, did not require Accu-Fab to indemnify RAC

for an accident that occurred on March 7, 1994.  The Court noted that Accu-Fab had begun its

work on the project without a written contract.  In *Accu-Fab*, the Court of Appeals reasoned:

> This Court has found nothing in the record to indicate any
> consideration flowing to Accu-Fab so as to compel it to indemnify [RAC] for
> Ladner's injuries.
> [RAC] suggests that Accu-Fab did receive consideration for its
> agreement to indemnify [RAC] for Ladner's injuries.  The consideration
> suggested by Anderson was the contract price to be paid to Accu-Fab for work
> performed.  While it is possible to execute a contract which indemnifies for
> prior events, such a contract must clearly set forth that intention.  This is
> particularly true where the incident for which indemnification is sought has
> already occurred and is known to both parties prior to the execution of the
> contract.
> In this case, the contract does not include prior occurrences, nor does it
> specifically include the known event.

*Accu-Fab*, 2000 WL 274291 at ¶¶36-38.  The Supreme Court granted certiorari in the Accu-Fab

case and issued a new opinion that did not address indemnification.  *Accu-Fab & Constr., Inc. v. Ladner*, 778 So. 2d 766 (Miss. 2001).  As a result, the *Accu-Fab* decision relied upon by ICCI has been withdrawn and has no precedential value.  *See Eagle Pac. Ins. Co. v. Quintanilla*, 923 So. 2d 266, 270 n.4 (¶9) (Miss. Ct. App. 2006).  Additionally, the *Accu-Fab* decision is distinguishable.  In the present suit, the subcontract was received by the parties prior to Horacio's accident, and ICCI had assented to the subcontract by performing over $300,000 worth of work under the subcontract, and by requesting payment for that work on documents that specifically acknowledged that the work was being performed pursuant to the subcontract.  Furthermore, the subcontract at issue contained the following clause:

> The Subcontractor's commencement of performance of any Subcontract responsibilities . . . without the specific directive of an authorized representative of the Contractor, shall constitute the Subcontractor's agreement to all terms and conditions of this Subcontract, without modification or limitation, and the Subcontractor's acceptance of all conditions at the Project Site.

(Ex. C to RAC's Mot.).  Therefore, ICCI consented to the terms of the subcontract, including the indemnification clause, by its conduct.

However, ICCI also argues that it does not owe indemnification because Horacio's injuries did not arise from or relate to work undertaken by the subcontractor or its subcontractors.  RAC counters that Eddie's presence on the job site necessarily arose from the work of ICCI and its subcontractor, AVC, since he would not have been on the site had it not been for the work of ICCI and AVC.  Nevertheless, pursuant to the plain language of the subcontract, it is not necessary for the Court to make that determination.  In the subcontract, ICCI agrees to indemnify RAC for all claims and liability "which arise from or occur in connection with work undertaken

or to be performed by the Subcontractor, its subcontractors or other third parties, or the agents or employees of any of them **OR** which arise from or occur in connection with any other act or omission relating to the **Subcontractor, its subcontractors or other third parties, or the agents or employees of any of them** . . . ."  (Ex. C to RAC's Mot.)  Thus, even if the claims did not arise out of the work of ICCI and/or its subcontractor, the subcontract provides that indemnification is owed for **any other act or omission** relating to ICCI, its subcontractors, or the employees of any of them.  It is undisputed that Eddie was an employee of ICCI's subcontractor, and that his negligence caused Horacio's injuries.  Therefore, Horacio's injuries and claim for workers' compensation clearly arose from or in connection with an act or omission relating to ICCI's subcontractor's employee, and RAC is entitled to indemnification for workers' compensation benefits paid to or on behalf of Horacio as a result of the April 20, 2005, accident.  Therefore, RAC is entitled to summary judgment as to its indemnity claim against ICCI.

## AVC'S MOTION FOR SUMMARY JUDGMENT

ICCI filed a cross-claim against AVC, its subcontractor, seeking indemnification should it be held liable for indemnification to RAC.  AVC has filed a Motion for Summary Judgment, asserting that it is not vicariously liable for Eddie's negligence in causing the accident, since he was acting outside the course and scope of his employment when the accident occurred.  In response, ICCI argues that AVC contractually obligated itself to indemnify ICCI, and therefore, it is not necessary that ICCI demonstrate that Eddie was acting within the course and scope of his employment.[2]  AVC counters that vicarious liability is a condition precedent to indemnity under

---

[2] Alternatively, ICCI argues that Eddie was acting within the course and scope of his employment at the time of the accident under Mississippi law.

-6-

the contract, but cites no authority in support of this argument.  Additionally, AVC argues that

the parties do not have an authentic copy of the 2005 contract because AVC misplaced its copy,

and ICCI's copy was destroyed during Hurricane Katrina.  AVC has submitted a duplicate copy

of the contract that was downloaded from ICCI's computer system and produced to AVC, but

AVC apparently disputes the validity of this duplicate copy.  (Ex. 4 to AVC's Reply Mem.)

       The Court can only determine whether indemnification is owed by reviewing the contract

language.  However, the Court cannot rely on the duplicate copy of the contract since AVC

disputes the authenticity of that contract.  *See Haynes v. Pennzoil Co.*, 141 F.3d 1163 at *3 (5th

Cir. Mar. 31, 1998) (explaining that, absent waiver, documents must be authenticated in order to

be admissible as summary judgment evidence).  When a contract is lost or has been destroyed,

the parties can submit parol evidence in order to prove the contract's existence and its terms.  *See*

*JPMorgan Chase Bank, N.A. v. Lott*, 2007 WL 30271 at *4 (S.D. Miss. Jan. 3, 2007) (citing

*Banks v. Mitsubishi Motors Credit, Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)).  However, neither

party has attempted to do so.  The Court cannot determine whether AVC is entitled to judgment

as a matter of law as to ICCI's indemnity claim without competent summary judgment evidence

as to the terms of the indemnification agreement.  A party seeking summary judgment bears the

initial burden of identifying those portions of the pleadings and discovery on file, together with

any affidavits, that it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Since AVC, the movant, has failed to meet

this burden, the Court finds that its Motion for Summary Judgment should be denied.

       **IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary

Judgment [44] filed by Roy Anderson Corp. ("RAC") is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary

Judgment [43] filed by AVC Painting Contractor, Inc. is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 6th day of December, 2007.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE