IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL ACTION NO. 1:07CV35-LG-JMR |
| | § | |
| INDUSTRIAL CORROSION CONTROL, | § | |
| INC., ROY ANDERSON CORP., and | § | |
| EDDIE CARDENAS a/k/a | § | |
| EDDY CARDENAS | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

**BEFORE THE COURT** is the Motion for Summary Judgment [74] filed by Industrial Corrosion Control, Inc. ("ICCI"), and the Cross-Motion for Summary Judgment [76] filed by QBE Insurance Corporation. ICCI's Motion for Summary Judgment is denied, and QBE's Cross-Motion for Summary Judgment is granted.

### FACTS

Roy Anderson Construction ("RAC") was the general contractor for the Hard Rock Hotel and Casino construction project in Biloxi, Mississippi. RAC entered a subcontract with ICCI, and ICCI entered a sub-subcontract with AVC. On April 20, 2005, an employee of AVC, Eddie Cardenas, was attempting to leave the construction site when he struck another vehicle, which in turn struck Horacio Cardenas, an employee of RAC.

RAC has been paying workers' compensation benefits to Horacio for the injuries he suffered in the accident. RAC demanded indemnification from ICCI pursuant to the subcontract between the parties. Thereafter, ICCI's insurer, QBE, filed this declaratory judgment action, asserting that no coverage was provided under the commercial automobile policy (policy number

ANA159643)[1] issued to ICCI for RAC's demand for indemnification. RAC then filed a cross-claim against ICCI, seeking indemnification for the workers' compensation benefits it has paid to Horacio. ICCI also filed a cross-claim against Eddie and AVC, seeking indemnification to the extent that it may be found liable to RAC.

This Court has previously granted summary judgment in favor of RAC, finding that ICCI must indemnify RAC under the subcontract. ICCI has now filed a Motion for Summary Judgment against its insurer, QBE, asserting that it is entitled to coverage under the automobile policy as a matter of law. QBE filed a Cross-Motion for Summary Judgment, asserting that the contractual liability exclusion in the policy precludes coverage.

## DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, any party to a civil action may move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.,* 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set

---

[1] The policy provides automobile liability coverage for all sums ICCI legally must pay as damages because of bodily injury or property damage caused by an accident resulting from the ownership, maintenance, or use of any auto, including hired autos and non-owned autos, in the amount of $1,000,000. (Ex. A to Compl., Ex. E to ICCI's Mot.)

forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

Under Mississippi law, when an insurance policy is plain and unambiguous, a court must construe it exactly as written. *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998). The commercial automobile policy issued to ICCI by QBE contains the following contractual liability exclusion:

> B.  Exclusions
> This insurance does not apply to any of the following:
> . . . .
> 2.  Contractual
> > Liability assumed under any contract or agreement.
> > But this exclusion does not apply to liability for damages:
> > a.  Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement, or
> > b.  That the "insured" would have in the absence of the contract or agreement.

(Ex. A. to Compl. at 3).

This Court has previously held that ICCI has a duty to indemnify RAC for the workers compensation payments made to its employee, pursuant to the agreement between RAC and ICCI. Therefore, the contractual liability exclusion is triggered, and this Court must determine if one of the exceptions to the exclusion applies. The first exception applies to insured contracts. The term "insured contract" is defined in relevant part as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Ex. A to Compl. at 9). Therefore, the indemnity agreement is an "insured contract" only if ICCI is assuming RAC's tort liability under that agreement. *See Certain London Mkt. Ins. Cos. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 106 Fed. Appx. 884, 2004 WL 1570356 at *2 (5th Cir. July 14, 2004). ICCI argues that it is seeking coverage for the tort liability that AVC owes as a result of the tort committed by its employee. However, the plain language of the policy provides that the pertinent issue is whether ICCI has assumed the tort liability of RAC, not AVC.

ICCI also argues that RAC is an additional insured under the policy, but RAC is not seeking coverage under the policy in this case. ICCI does not provide any other argument concerning its assertion that the agreement falls within the definition of "insured contract" in the policy and only discusses whether the agreement was executed prior to the accident. QBE correctly argues that ICCI has only assumed RAC's workers' compensation liability under the agreement, because RAC is immune from tort liability for the accident at issue. *See* Miss. Code Ann. § 71-3-9 (providing that the liability of an employer to pay workers' compensation is the exclusive remedy for an injured employee). Additionally, no party has ever asserted that RAC otherwise owes any tort liability for the accident that injured its employee. As a result, the indemnity agreement does not constitute an insured contract under the policy, such that the insured contract exception to the contractual liability exclusion does not apply. *See Forest Oil Corp. v. Ace Indem. Ins. Co.*, 2004 WL 2347561 at *1 (E.D. La. Oct. 15, 2004) (holding that liability arising out of workers' compensation law did not constitute tort liability; thus, the indemnity agreement did not constitute an insured contract).

Therefore, it is necessary for the Court to determine if the second exception to the contractual liability exclusion applies. This exception pertains to liability for damages that the

insured would have in the absence of the contract or agreement. Ex. A. to Compl. at 3; *see also Federated Mut. Ins. Co. v. Grapevine Excavation*, 197 F.3d 720, 727 (5th Cir. 1999) (holding that when "liability could be imposed pursuant to either a contractual indemnity provision or a generally applicable legal principle, the contractual liability exclusion will not bar coverage"). ICCI argues that the exception applies because it "arguably" could have vicarious liability for Eddie Cardenas' accident. In support of this assertion, ICCI relies on a Complaint filed against ICCI and AVC by the Department of Labor seeking overtime wages on behalf of the employees of AVC. In the Complaint, the Department of Labor asserts that AVC and ICCI "engaged in related activities performed either through unified operation or common control for a common business purpose, constitute an enterprise within the meaning of § 3 (r) of the Act, 29 U.S.C. § 203(r)." (Exhibit G to ICCI's Mot. at 2).[2] Thus, ICCI argues that it could be held vicariously liable for Eddie's accident if the allegations made by the Department of Labor are correct.

However, at the same time, ICCI denies that Eddie Cardenas was its employee in the Department of Labor lawsuit. (Ex. C to QBE's Mot.). Additionally, ICCI has not provided any evidence[3] that AVC and ICCI were joint employers of Eddie Cardenas and has not provided any analysis of whether he was an independent contractor or employee under Mississippi law. *See Miss. Dep't of Employment Sec. v. Prod. Connections, LLC*, 963 So. 2d 1185, 1187 (¶5) (Miss.

---

[2] ICCI claims that the Department of Labor is not asserting that AVC and ICCI were involved in an enterprise but were joint employers. However, the Court has reviewed the Complaint attached to ICCI's Motion, and the Department of Labor repeatedly asserts that ICCI and AVC were involved in an enterprise. (Exhibit G to ICCI's Mot. at 2-3).

[3] The Department of Labor Complaint constitutes allegations, not evidence. Additionally, QBE correctly notes that the term "employer" is defined more broadly in the Fair Labor Standards Act than in traditional common law theories of liability. *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989).

Ct. App. 2007) (discussing the factors to consider when determining the type of employment relationship). Furthermore, ICCI does not actually assert that Eddie was its employee. Rather, it merely asserts that it arguably could be considered his employer.

Meanwhile, QBE has produced the deposition testimony of ICCI's corporate designee, Babs Box, who testified that ICCI never exercised any control over AVC's operations on the project, that ICCI did not have the right to terminate AVC's employees, that AVC could offer its services and its employees' services to anyone it wanted to, that AVC's employees were not ICCI's employees, and that AVC was responsible for paying wages to its employees. (Ex. D to QBE's Mot.). Thus, there is no evidence before the Court that ICCI had any right to exercise control over the work of AVC or its employees. *See Prod. Connections*, 963 So. 2d at 1187 (explaining that the right to exercise control is the central issue to be considered in determining the type of employment relationship).

As a result, ICCI has not demonstrated that it is entitled to coverage under the automobile policy as a matter of law. Additionally, with regard to QBE's Cross-Motion for Summary Judgment, ICCI has not presented sufficient evidence to show the existence of a genuine issue for trial regarding whether it could be held vicariously liable for the accident at issue. *See Anderson,* 477 U.S. at 256-57 (holding that the non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial). Therefore, there is no genuine issue of material fact that ICCI's liability to RAC arises solely out of the indemnity agreement. As such, the second exception to the contractual liability exclusion does not apply. Thus, the Court finds that the contractual liability exclusion in the policy precludes coverage for RAC's claims against ICCI.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [74] filed by Industrial Corrosion Control, Inc. is **DENIED**, and the Cross-Motion for Summary Judgment [76] filed by QBE Insurance Corporation is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 24th day of April, 2008.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE
